NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| WAYNE ROSE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Hon. Dennis M. Cavanaugh |
| v. | : | |
| | : | **OPINION** |
| FRANCIS SCHULTZ, ARTHUR | : | |
| D'ITALIA, JOHN ELEFTHROW, | : | Civil Action No. 03-CV-1684 (DMC) |
| EVELYN SANTIAGO, OFFICER JANE | : | |
| DOE, COUNTY OF HUDSON, HUDSON | : | |
| COUNTY PROSECUTOR'S OFFICE, | : | |
| LOUIS SERTERIDES, THE STATE OF | : | |
| NEW JERSEY, MARK NELSON, MARY | : | |
| REINKE, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S. District Judge

_____This matter comes before the Court upon motions by the State of New Jersey, the Hon. Arthur N. D'Italia, A.J.S.C., the Hon. Francis B. Schultz, J.S.C., the Hon. Mark J. Nelson, J.S.C., Evelyn Santiago, John J. Elefthrow, Louis Serterides and Mary Reinke ("Defendants") to dismiss Wayne Rose's ("Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12(b)(6). No oral argument was heard pursuant to Fed. R. Civ. P. 78. After carefully considering the submissions of the parties and for the following reasons, the Court finds that Defendant's motion to dismiss must be **granted.**

<u>**BACKGROUND**</u>

On April 16, 1999, the Superior Court of New Jersey sentenced Plaintiff to probation for a period of five years after Plaintiff pleaded guilty to one count of child abuse in the fourth degree. This action is Plaintiff's third federal civil rights action connected to the five-year term of probation which followed the child abuse conviction.

In October 2002, Plaintiff filed his first lawsuit, <u>Rose v. Goldman</u>, in the United States District Court for the Eastern District of New York against various judges, probation officers and a psychologist. Plaintiff alleged that he was improperly directed to attend psychiatric counseling as part of his probation and unlawfully charged with violating the conditions of his probation for refusing to attend those counseling sessions.

In <u>Rose v. Goldman</u>, Plaintiff sued New Jersey Superior Court Judges Arthur N. D'Italia, Camille M. Kenny and Lawrence P. DeBello, New Jersey Probation Officers Evelyn Santiago, Jude Okoro, Colleen Walsh, Christopher Stanecki and Anthony Casale, Jr., New York Probation Officers Robert Goldman, David Bethel and Sylvia Way, and a psychologist, Dr. William Ford. Mirroring the instant case, <u>Rose v. Goldman</u> arose from events which occurred during Plaintiff's probation. Rose alleged that the defendants in bad faith caused a warrant to issue for his arrest for failure to pay fees related to his probation despite the fact that he was financially unable to do so. Plaintiff also alleged that the defendants caused him to be improperly labeled as a sex offender.

On January 9, 2003, Officer Santiago allegedly made a request to Defendant Schultz, a New Jersey Superior Court Judge, to charge Plaintiff with violating the terms of his probation. Plaintiff appeared before Judge Schultz in response to the charges and was represented by Defendant John Elefthrow, an Assistant Deputy Public Defender of the State of New Jersey. Rose, however, did not

2

wish to be represented by Elefthrow because, at the time, Rose had another claim pending in the same case against another attorney employed by the Public Defender's Office.  Mr. Elefthrow advised Rose to submit to medical treatment according to the terms of his probation which prompted Plaintiff to dismiss him as his attorney.

Rose then asserted that Judge Schultz violated his rights under the Sixth Amendment by requiring him to represent himself *pro se* after Rose dismissed Elefthrow.  Plaintiff further alleged that Judge Schultz violated his rights by not interceding on his behalf in his attempt to get documents from the Hudson County Prosecutor's Office.  Rose also alleges that Defendant Mary Reinke, a Detective with the Hudson County Prosecutor's Office, purposely did not provide the requested documents because Rose intended to use them against the Prosecutor's Office.

On February 25, 2003, Plaintiff filed an additional suit in the United States District Court for the Southern District of New York against the City of New York, New York Probation Officers David Bethel and Sylvia Way, and New Jersey Probation Officers Colleen Walsh and Santiago.  In that matter, Rose v. Bethel, Plaintiff repeated a number of the allegations made in Rose v. Goldman.  Plaintiff alleged that Probation Officer Bethel improperly directed him to attend psychiatric counseling.  When Plaintiff refused to attend, Mr. Bethel allegedly reported Plaintiff's refusal to Santiago and Walsh, who initiated proceedings to revoke Plaintiff's probation.

Plaintiff filed the instant lawsuit on April 16, 2003, against the State of New Jersey, Judge Schultz, Judge D'Italia, the Assignment Judge of Hudson County, Elefthrow and Santiago.  Rose complained that his Sixth Amendment right to counsel had been violated because Judge Schultz failed to provide him with acceptable counsel.  Additionally, Plaintiff alleges that Defendants were liable for the failure to train, discipline and supervise those whom Plaintiff believed violated his

3

rights.

Judge Schultz recused himself after being named in the instant suit and transferred the probation violation action to Judge Mark J. Nelson.  Although Judge Nelson dismissed the charge that Plaintiff violated the terms of his probation, the order contains language that Plaintiff should continue counseling as recommended by probation.  Plaintiff contends that he was not given a copy of the order as retaliation for naming Judge Schultz as a Defendant and so that he would violate the order out of confusion.

On June 16, 2003, Plaintiff filed an Amended Complaint naming additional defendants including Judge Nelson and Detective Reinke.  On July 22, 2003, this Court administratively terminated further proceedings pending the adjudication of Rose v. Goldman.

On March 12, 2004, in Rose v. Goldman, the Hon. Nicholas G. Garaufis, U.S.D.J., Eastern District of New York, entered an order that granted in part and denied in part the State of New Jersey Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Judge Garaufis dismissed the claims against Judges D'Italia, Kenny and DeBello on the basis of absolute judicial immunity and ultimately dismissed the claims against Officers Santiago and Walsh on the basis of absolute prosecutorial immunity.  Judge Garaufis ruled that the New Jersey probation officers' conduct in making the discretionary decision to prosecute the probation violation falls within the probation officers' absolute prosecutorial immunity.

This Court entered an order reinstating the instant case on December 29, 2005.  Plaintiff's complaint alleges that Defendants violated his right to counsel in a criminal proceeding by requiring him to appear on several occasions in court "without proper legal counsel."  Second, Plaintiff alleges that he was prosecuted by Defendants in retaliating for filing lawsuits against them or their

colleagues.  Plaintiff also alleges that Defendants prosecuted him "wrongfully, unlawfully and without sufficient information or charges having been made against [him]."  In the fourth and final cause of action, Plaintiff claims that Defendants violated his due process rights when he was not given a copy of Judge Nelson's June 5, 2003 Order.

In <u>Rose v. Bethel</u>, the State of New Jersey Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  On August 11, 2006, United States Magistrate Judge Harry B. Pitman of the Southern District of New York issued a Report and Recommendation to District Judge George B. Daniels recommending that Judge Daniels grant the Defendants' motion to dismiss Plaintiff's complaint.  This recommendation reasoned that the claims against New Jersey Probation Officer Santiago and others were barred by *res judicata* and collateral estoppel in that the claims were identical to and already adjudicated by Judge Garaufis in <u>Rose v. Goldman</u>.

<u>**S**TANDARD OF **R**EVIEW FOR 12(b)(6) **M**OTION TO **D**ISMISS</u>

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations in the Complaint must be taken as true and viewed in the light most favorable to the plaintiff.  <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975); <u>Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.</u>, 140 F.3d 478, 483 (3d Cir. 1988); <u>Robb v. Philadelphia</u>, 733 F.2d 286, 290 (3d Cir. 1984).  In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider only the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

Furthermore, courts in the Third Circuit may review facts alleged in the Complaint, in documents explicitly relied upon or incorporated by reference into the Complaint, as well as other

documents integral to the Complaint.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  "We must determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief, and we must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."  Nami v. Fawer, 82 F.3d 63, 65 (3d Cir. 1996).

"Although the pleading requirements...are very liberal, more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant."  5A Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 at 318 (2d ed. 1990).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Zynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982).

DISCUSSION

**Claims Against Officer Santiago and Judge D'Italia**

Defendants Santiago and D'Italia move to dismiss Plaintiff's complaint against them on the grounds of *res judicata* because it has already been determined that absolute judicial and prosecutorial immunity bar the claims against them.  The doctrine of *res judicata*, or claim preclusion, will bar a suit (or claims within a suit) if "(1) the judgment in the fist action is valid, final and on the merits, (2) the parties in both actions are the same or are in privity with each other, (3) the claims in the second action . . . arise from the same transaction or occurrence as the claims in the first action."  Cahn v. United States, 269 F. Supp. 2d 53, 544 (D.N.J. 2003) (quoting Silbert v. Phelan, 901 F. Supp. 183, 186 (D.N.J. 1995)).

6

A prior judgment is to be given "preclusive effect" by "foreclosing litigation of matters that should have been raised in an earlier suit." Id. As a result, "a judgment forecloses litigation of a matter that never has been litigated because of a determination that it should have been advanced in an earlier suit." Id.

The doctrine of collateral estoppel, or issue preclusion, is based upon principles similar to *res judicata*. Under collateral estoppel, "a determination by a court of competent jurisdiction on an issue that supports its judgment is conclusive in subsequent suits involving the same party or one in privity with that party." Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 572 (3d Cir. 2000). Collateral estoppel prevents a plaintiff from re-litigating a previously adjudicated issue in subsequent suits based on the same or a different cause of action involving a party to the prior litigation. In re Remeron Antitrust Litig., 335 F. Supp. 2d 522, 526 n.4 (D.N.J. 2004).

For collateral estoppel to apply, four elements must be met: "(1) the issue sought to be precluded is the same as that involved in the prior action, (2) that issue was actually litigated, (3) it was determined by a final and valid judgment and (4) the determination was essential to the final judgment." In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992). Additionally, the party against whom estoppel is sought must have been a party to the prior action and must have had a full and fair opportunity to litigate the issue in the prior action. McClendon v. The Cont'l Group, Inc., 660 F. Supp. 1553, 1560 (D.N.J. 1987).

Here it appears that all prerequisites for the application of the doctrine of *res judicata* and the related doctrine of collateral estoppel have been met with respect to the claims against Judge D'Italia and Probation Officer Santiago. D'Italia and Santiago argue that the prior actions, Rose v. Goldman and Rose v. Bethel, share the same identity of issues, parties (Plaintiff, Judge D'Italia and

7

Officer Santiago) and causes of action.  In <u>Rose v. Goldman</u>, Plaintiff brought a claim that the very same violation of probation proceeding underlying his case violated his constitutional rights.[1]  Judge Garaufis held that Judge D'Italia was entitled to absolute judicial immunity with respect to Plaintiff's claim that his Constitutional rights were violated:

> The New Jersey judges' decision not to intervene in allegedly improper conduct by probation officers and the prosecutor was an inherently judicial decision.  Even the plaintiff acknowledges that, for instance, D'Italia "refused to intervene despite his power and responsibility to do so as the supervising chief justice."  Further, there is no argument in this case that the New Jersey judges did not possess jurisdiction over the alleged probation violations.  As a result, the New Jersey judges are immune from the instant claims.

<u>Rose v. Goldman</u>, No. 02-CV-5370 (E.D.N.Y. Mar. 12, 2004) at 9.

Judge Garaufis further held that Officer Santiago was entitled to absolute prosecutorial immunity with respect to her role in the violation proceeding:

> [T]he New Jersey probation officers did not investigate whether or to what extent the plaintiff was obtaining mental health counseling, but initiated a probation violation proceeding at the recommendation of New York probation officers.  A New York probation officer sent New Jersey Probation Officer Evelyn Santiago a letter "requesting that the Hudson County Probation Department filed a violation on the probationer, Wayne Rose, for not compling [sic] with his special condition."  This letter makes clear that it is the New York probation officers that investigated the violation and the New Jersey probation officers that merely prosecuted the probation violation.  As a result, with respect to initiating the violation proceeding, the New Jersey probation officers' conduct in making the discretionary decision to prosecute the probation violation falls within the probation officers' absolute prosecutorial immunity.

---

[1] Although the commencement of violation of probation proceedings in January 2003 obviously post-dated the filing of the Complaint in <u>Rose v. Goldman</u> in October 2002, Judge Garaufis considered the complained of conduct as part of Plaintiff's allegation that he was subject to a continuing course of illegal conduct by Officer Santiago and other defendants.

Rose v. Goldman, No. 02-CV-5370 (E.D.N.Y. Sep. 20, 2004) at pp. 4-6.

In response to the arguments of Judge D'Italia and Officer Santiago, Plaintiff insists that neither of them is entitled to immunity of any kind.  Rose alleges that neither D'Italia nor Santiago acted reasonably or in good faith, which is required in order to receive immunity protection. Although he cites no authority for this argument, Rose insists that his complaint must be maintained by this Court because the conduct alleged in his complaint "clearly 'shocks the conscience' and certainly offends a sense of 'fair play' and 'decency'."

Plaintiff cites a Fourth Circuit Court of Appeals case for the proposition that "supervisory officials may be held liable in certain circumstances for constitutional injuries inflicted by their subordinates. Reid v. Kayye, 885 F.2d 129 (4th Cir. 1989).  Even were this case persuasive authority for purposes of this Court's decision, Plaintiff's reference to it does nothing to defend against D'Italia's and Santiago's argument that the claims against them are barred by the doctrine of *res judicata*.

In his submission to this Court, Plaintiff time and again insists that neither D'Italia nor Santiago are entitled to immunity for one reason or another.  However, the within action is not an appeal.  This Court does not have the authority to review decisions made in the Eastern District of New York with regard to the same claims against D'Italia and Santiago.  Yet, to the extent that it's possible to divine a coherent argument for the ambiguous and disjointed conspiracy theories submitted by Plaintiff, Rose only attempts to reargue the substance of his claims rather than acknowledge the *res judicata* and collateral estoppel issues raised by D'Italia and Santiago.

Plaintiff had a full and fair opportunity to litigate his claims against D'Italia and Santiago in Rose v. Goldman.  Judge Garaufis's opinions and orders constitute a final judgment with respect to

Plaintiff's claims.  When a court grants a motion to dismiss and expresses its reasons for doing so in a written opinion, as Judge Garaufis had done in <u>Rose v. Goldman</u>, the decision is considered final for purposes of collateral estoppel.  <u>Hubicki v. ACF Indus.</u>, 484 F.2d 519, 524 (3d Cir. 1973).  Such is the case here.

Furthermore, in his August 11, 2006 Report and Recommendation in <u>Rose v. Bethel</u>, Magistrate Judge Pitman recognized the preclusive effect of Judge Garaufis's rulings in recommending that District Judge Daniels dismiss the claims against Officer Santiago.  This Court will do the same with respect to the instant, identical claims against Judge D'Italia and Officer Santiago.

For the foregoing reasons, the claims against Judge D'Italia and Officer Santiago are **dismissed**.

## Claims Against Judges Nelson and Schultz and Public Defenders Serterides and Elefthrow

Judges Schultz and Nelson are accused by Plaintiff of violating his civil rights in connection with their roles in adjudicating the violation of probation charge that underlies this lawsuit.  Plaintiff claims that Judge Schultz denied him a request for representation of counsel when Plaintiff refused to work with the public defender assigned to his case.  Plaintiff alleges that Judge Nelson did not provide him with a court order reflecting one of his rulings.

It is well-settled that judges are absolutely immune from suit for damages based upon performance of their judicial functions.  <u>Briscoe v. LaHue</u>, 460 U.S. 325, 324 (1983).  Absolute judicial immunity is necessary to permit judges to execute their duties impartially, independently and without fear of harassment or intimidation.  <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967).  "Any errors made by a judge may be corrected on appeal, but a judge should not have to fear that unsatisfied

litigants may hound him with litigation charging malice or corruption." Shuster v. Oppelman, 963 F. Supp. 394, 396 (S.D.N.Y. 1997).

In order to determine whether certain conduct is "judicial" and protected by judicial immunity as opposed to "non-judicial" conduct which receives no protection is "whether the function in question is a truly judicial act or an act that simply happens to have been done by judges." Foster v. Walsh, 864 F.2d 416, 418 (6th Cir. 1988). Here, the alleged illegal conduct of which Plaintiff accuses Judges Nelson and Schultz is clearly judicial in that it consists of acts or omissions taken by each judge in his official capacity. Accordingly, Judge Schultz and Judge Nelson are entitled to absolute judicial immunity.

Plaintiff fails to squarely respond to the argument put forth by Judges Schultz and Nelson that they are entitled to judicial immunity. Instead, Rose merely relies on his theory that these Defendants did not act reasonably or in good faith and, therefore, should receive no protective immunity from Plaintiff's allegations that Defendants deprived him of due process.

Even to the extent that Plaintiff accuses Judges Nelson and Schultz of intentionally harming or conspiring against him, their conduct remains immunized. Absolute judicial immunity applies even when the judicial acts in question are in error, malicious or exceed a judge's jurisdiction. Mireles v. Waco, 502 U.S. 9, 11-12 (1991). In this case, there is no support for Plaintiff's contention that Defendants acted maliciously or exceeded their jurisdiction.

Turning to the claims against the public defenders, Assistant Deputy Public Defender Elefthrow represented Plaintiff in his violation of probation action. Plaintiff did not want Elefthrow to represent him because Plaintiff was already in the process of suing another public defender, Christopher Kazlau, in Rose v. Goldman. Judge Schultz allegedly denied Plaintiff's requests to

11

appoint another attorney in place of Elefthrow.  As a result, Judge Schultz became another of the Defendants in this litigations and recused himself.

Eventually, the Public Defender's Office retained private pool attorney, Louis Serterides, to represent Plaintiff in place of Elefthrow in the violation of probation proceedings which were then reassigned to Judge Nelson in place of Judge Schultz.  Judge Nelson dismissed the violation of probation action, ordered that Plaintiff remain on probation and directed him to follow the orders of his probation officers.  Plaintiff alleges that Serterides did not give him a copy of Judge Nelson's order memorializing his decision.

This Circuit has held that absolute immunity applies to public defenders and private attorneys retained by the public defender's office in recognition of the public policy encouraging the free exercise of discretion in the discharge of pre-trial, trial and post-trial obligations.  Brown v. Joseph, 463 F.2d 1046, 1048 (3d Cir. 1972) cert. den., 412 U.S. 950 (1973).  This policy also serves the end of attracting qualified attorneys in the public defender's office who might otherwise be discouraged from such tasks if they were subject to complaints, often *pro se*, while judges and prosecutors enjoyed immunity.  Id. at 1049.  Otherwise, the Third Circuit held, a public defender would be under the constant threat of suit involving the attorney in "an intrinsic conflict of protecting himself and representing his client."  Id.

There are, however, two exceptions to the immunity provided to public defenders: (1) where there is an alleged conspiracy or intentional misconduct and (2) where legal malpractice is alleged. Tower vv. Glover, 467 U.S. 914 (1984).  Plaintiff's allegations fail to reveal a cognizable claim for either conspiracy or legal malpractice against either Elefthrow or Serterides.  To state a claim for conspiracy, "[t]he law requires that plaintiffs demonstrate the existence of an overt act of one or

more of the conspirators in furtherance of the conspiracy.  They must plead and show a common goal

or real agreement to achieve an unlawful purpose or to achieve a lawful purpose by unlawful means,

and finally, the overt act must be the proximate cause of the damages to the plaintiff."  Delbridge v.

Office of the Public Defender, 569 A.2d 854, 866-67 (Law Div. 1989).

In Delbridge, the plaintiffs alleged that their appointed counsel conspired with judges,

prosecutors and child protection agency employees to deprive them of the custody of their children

in a parental rights termination proceeding.  Id..  In support of their claims, plaintiffs labeled every

action or inaction of the various parties in the underlying proceedings as conspiratorial.  Id at 866.

For example, plaintiffs alleged that their court-appointed defense counsel failed to get exculpatory

reports and that this failure amounted to conspiracy.  Id.  They alleged that another defense attorney's

rejection of a therapists' report was conspiratorial because the attorney's opinion coincided with that

of the state.  Id.  The court found that the incidents complained of did not constitute overt acts

sufficient to state a claim for conspiracy.  Id.  The court held that the plaintiffs' allegation of a

massive conspiracy among all the participants in the underlying proceedings, even assuming there

were infirmities in those proceedings, did not amount to a cognizable conspiracy claim.  Id.

Here, in alleging conspiracy against Defendants, Plaintiff asserts that "[t]his court (sic) must

address 'what was the state of mind of the defendants when they filed and attempted to have plaintiff

prosecuted' . . . [w]ere they merely 'doing their jobs' as they allege or was this in retaliation for the

plaintiff filing a lawsuit against them?"  There is no allegation that Defendants Elefthrow or

Serterides or anyone connected with them engaged in an overt act in furtherance of an unlawful

conspiracy against Plaintiff to deprive him of his constitutional rights.  Other than his conclusory

allegations that a conspiracy exists, Plaintiff fails to allege facts supporting a claim of any conspiracy

against him.

Plaintiff's open-ended questions about Defendants' collective state of mind are insufficient to allege that there was a common goal or real agreement.  Officer Santiago filed a violation of probation against Plaintiff at the request of New York Officer Bethel because Plaintiff refused to attend counseling.  The Public Defender's Office assigned Elefthrow to represent Plaintiff.  Plaintiff disagreed with Elefthrow's advice and refused his representation.  Serterides took Elefthrow's place. Thereafter, the charge against Plaintiff was dismissed.  There is nothing in Plaintiff's submissions suggestive of a conspiratorial agreement, an overt act or harm to Plaintiff other than mere suspicion and paranoia that he is the victim of an imagined conspiracy.

Plaintiff cannot state a claim for legal malpractice either.  "The standard for determining legal malpractice is that an attorney is obligated to exercise that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess."  Delbridge, 569 A.2d at 869.  Additionally, plaintiffs "bear the burden of proving that their losses were proximately caused by the negligence of their attorneys."  Id.

Here, there is simply no harm to be remedied.  The violation of probation charge for which Elefthrow and, later, Serterides provided representation was dismissed by Judge Nelson in June 2003.  Plaintiff fails to allege any conduct that would even suggest that Elefthrow or Serterides deviated from a standard of care owed to Plaintiff and that the deviation harmed Plaintiff.  Neither the alleged lack of communication between Plaintiff and Elefthrow, nor Serterides's alleged failure to give Plaintiff a copy of Judge Nelson's order, is alleged to have harmed Plaintiff.  Accordingly, even if Plaintiff brought a legal malpractice claim, it would be dismissed.

Accordingly, the claims against Judges Nelson and Schultz as well as the claims against

14

Serterides and Elefthrow are **dismissed**.

**Claims against New Jersey and the Individual Defendants in their Official Capacity**

The Eleventh Amendment of the United States Constitution states that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment bars federal jurisdiction over lawsuits brought by individuals against a state unless the state has consented to such jurisdiction. College Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 669 (1999). The Supreme Court of the United States extended Eleventh Amendment immunity to suits in federal courts against a non-consenting state by that state's own citizens in Employees v. Mo. Dep't of Public Health and Welfare, 411 U.S. 279, 280 (1973).

This immunity applies to agencies and officers who act on behalf of the state and who can therefore assert the state's sovereign immunity. Natural Res. Def. Council v. Ca. Dept. of Transp., 96 F.3d 420, 421-22 (9th Cir. 1996), and to claims against the State and State officers under Section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989).

The State of New Jersey has not waived its sovereign immunity with regard to suits brought in federal court. Johnson v. State of New Jersey, 869 F. Supp. 289, 298 (D.N.J. 1994). Courts have consistently held that sovereign immunity bars Section 1983 claims against a state and its agencies. Garcia v. Richard Stockton Coll. of New Jersey, 210 F. Supp. 2d 545, 550 (D.N.J. 2002). This immunity extends to the State Judiciary and its employees. Johnson, 869 F. Supp. at 296-97. Here, there is no exception to Eleventh Amendment immunity that would permit Plaintiff to proceed with his claims against the State of New Jersey Defendants.

15

Accordingly, Plaintiff's claims against the State of New Jersey and against the individual Defendants in their official capacity are **dismissed**.

**<u>Claims against Mary Reinke</u>**

On October 11, 2002, Plaintiff made a demand on the Hudson County Prosecutor's Office which he characterized as a Freedom of Information Act request, but is actually a request from a local, not federal body.  On November 9, 2002, Mary Reinke, a Detective and the Hudson County Prosecutor's Office, sent Plaintiff a form known and designated as a Request for Public Records. Ms. Reinke sent the form by certified mail, return receipt requested.  Plaintiff never returned the form to the Hudson County Prosecutor's Office or contacted that office in any way before naming the office and Reinke as Defendants in this action.

To the extent that Plaintiff brings a claim against Reinke under the New Jersey Public Records Act, which he cites once in his brief, it is premature because Plaintiff has not availed himself of the procedural mechanisms that the statute itself provides.  Under the statue, N.J.S.A. 47:1A-1.1 *et seq*, a Custodian of Records or public agency can generate a form by which a request can be made for documents.  Reinke sent that form to Plaintiff.  Plaintiff never sent back the form. Even if it is assumed that Plaintiff completed the form, N.J.S.A. 47:1A-6 allows a person denied access to institute a proceeding to challenge the custodian's decision in Superior Court or to file a complaint with the Government Record's Council.  Plaintiff has failed to exhaust the procedural remedies available to him.

Accordingly, Plaintiff's claims against Reinke are **dismissed.**

## CONCLUSION

For the reasons stated, it is the finding of this Court that Defendants' Motions to dismiss are

**granted**.  An appropriate Order accompanies this Opinion.


 S/ Dennis M. Cavanaugh
Hon. Dennis M. Cavanaugh, U.S.D.J.

Date:        April   17  , 2007

Orig.:        Clerk
cc:          Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File